# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

YOUNES KABBAJ, :
:
            Plaintiff, :
:
v. : Civil Action No.10-431-RGA
:
AMERICAN SCHOOL OF TANGIER, :
et al., :
:
            Defendants. :

## **MEMORANDUM**

This memorandum addresses the various requests and motions filed by Younes Kabbaj ("Kabbaj").[1]

## I.    **BACKGROUND**[2]

Kabbaj, a former employee of the American School of Tangier ("AST"), filed numerous lawsuits alleging employment discrimination, violations of a state whistleblowers' protection act, negligence, intentional infliction of emotional distress, intentional interference with a contractual relationship, abuse of process, conversion, breach of contract, tortious interference, and defamation.[3]

In his first action, C. A. No. 10-431-RGA, the parties entered into a confidential settlement agreement, followed by a joint motion to dismiss with prejudice and consent

---

[1] D.I. 65, 66, 70 and 71.

[2] For a more detailed factual and procedural background, *see Kabbaj v. Simpson*, C.A. No. 12-1322-RGA/MPT, 2013 WL 2456108 (D. Del. June 6, 2013).

[3] *See* C. A. Nos. 10-431-RGA, 12-1322-RGA-MPT, 13-1522-RGA, 14-780-RGA, 14-982-RGA, 14-1001-RGA.

order, granted by the court on April 24, 2012.[4] These matters were heard by me after the parties consented to my jurisdiction for all matters related to settlement and to rule on the joint motion to dismiss with prejudice and consent order.[5] (*Id.* at D.I. 53). The dismissal order provided that the court would retain jurisdiction of the matter following dismissal for the purpose of enforcing the parties' written settlement agreement and to resolve disputes regarding that settlement agreement. The dismissal order further restrained and prohibited Kabbaj from having any contact with numerous persons and entities (reference as the "Releasees") involved in C. A. No. 10-431-RGA.[6] Finally, the dismissal order provided that, unless prior written permission is obtained from this court, defendants may not bring a civil action against Kabbaj, and he may not institute a civil action against any of the releasees of the settlement agreement with respect to any matter not released by the parties' settlement agreement, including but not limited to, any claim that any party breached this agreement.[7]

On October 18, 2012, Kabbaj filed a motion for leave to file a lawsuit against a releasee, Mark S. Simpson ("Simpson"). The motion was filed under the present civil action number. As evidenced from the contents of the motion and the exhibits attached, the motion was a request to file another action, which appeared related to this matter, but was limited to only one of the defendants originally sued.

According to the exhibits attached to the motion, Kabbaj attempted to initially file

---

[4] D.I. 54.
[5] C.A. No. 10-431-RGA, D.I. 53.
[6] *Id.*
[7] The numerous releasees are identified in paragraph 11 of the Confidential Settlement Agreement.

2

his proposed action for alleged unlawful and defamatory conduct and tortuous interference with a contract against Simpson in the Southern District of New York. In accordance with the Order of The Honorable Loretta A. Preska, dated October 12, 2012, the matter known as *Kabbaj v. Simpson*, C.A. No. 12-7397 (LAP) was transferred to the District of Delaware and assigned a separate civil action number in this court of 12-1322-RGA. In her Order, Judge Preska relied upon the April 24, 2012 order of this court, enjoining Kabbaj from instituting any action against any releasee absent prior permission from this court. Thereafter, Kabbaj initiated other actions, as noted herein, against Simpson, AST (a releasee), Brian Albro ("Albro", a possible releasee), Yahoo, Inc., Amazon, Inc., Google, Inc., various unidentified "John Does" and others.

## II. DISCUSSION/ANALYSIS

### A. Request to Engage in Mediation and/or File Lawsuit

On January 2, 2014, Kabbaj filed a request for this court to modify certain terms of the settlement agreement of March 12, 2012 and consent order issued April 24, 2012 in this matter to allow him to sue AST and Simpson and "be released from the majority of the provisions of the AST settlement agreement in order to be able to pursue Mark Simpson for Breach of Contract" in a jurisdiction where personal jurisdiction exists.[8] Absent the mention of mediation in the caption, no other reference to mediation is contained in the request. No proposed complaint was attached to the request for the

---

[8] D.I. 65. Despite the caption to this motion, Kabbaj is asking this court to circumvent only certain of the AST settlement provisions purportedly to allow him to "resolve any issues concerning Simpson's breach of contract." D.I. 65 at ¶ 7.

3

court to review to determine the adequacy of the pleading and proposed action. When Kabbaj filed his previous motion in this matter for permission to sue Simpson for alleged violations of the settlement agreement,[9] a proposed complaint was attached as an exhibit on which Kabbaj relied.[10] Based on certain representations and his proposed complaint, his motion for leave to file an action against Simpson was granted. He was specifically directed to determine the appropriate court where personal jurisdiction and effective service of process over Simpson could be accomplished. Despite the court's direction, Kabbaj proceeded with the action in this court under C.A. No. 12-1322-RGA. The matter was subsequently dismissed for lack of personal jurisdiction, which was affirmed on appeal.[11]

Because his request failed to provide a proposed complaint to enable the court to evaluate his pleading, and provide notice of the claims to be asserted against the proposed defendants, Kabbaj's request (D.I. 65) is DENIED.

### B. Motion to Set Deadline/Motions to File A Complaint

On February 11, 2014, Kabbaj filed a motion to set a deadline for Simpson and AST to respond to his previous motion.[12] Attached to this motion were additional publications allegedly posted by Simpson and Albro, claimed by Kabbaj to be Simpson's husband. Kabbaj contends his attempts to file an action in another

---

[9] Kabbaj does not request provisions binding AST or Simpson be modified, including their obligation to seek permission to sue Kabbaj. Nor does he suggest by rescinding material conditions of the agreement for which he received a significant settlement amount, that he return any or all of the settlement funds.

[10] D.I. 55, Ex. 3. See also D.I. 54, 60 in C.A. 10-431-RGA.

[11] See Kabbaj v. Simpson, 547 Fed. Appx 84 (3d Cir. 2013); See also, Kabbaj v. Simpson, C.A. No. 12-1322-RGA/MPT, 2013 WL 2456108 (D. Del. June 6, 2013).

[12] D.I. 66.

4

jurisdiction is being thwarted by the proposed defendants' alleged refusal to respond. Plaintiff also requests a telephonic conference with all parties "to determine the best way . . . to transfer" the proceedings of C.A. No 13-1522-RGA, and help him craft an amended complaint in that case before transferring the entire matter to another jurisdiction.[13] No proposed complaint was attached to the motion.

Subsequent to this motion, the Honorable Richard G. Andrews issued a memorandum opinion on April 7, 2014 in C.A. No. 13-1522-RGA addressing various motions, including Kabbaj's motion to add Albro, his motion to add AST as a defendant and his motion to file a second amended complaint to add both Albro and AST.[14] Those motions were denied.[15] Kabbaj has since filed an appeal to that decision. As a result, Kabbaj's justification for a teleconference to address his motion to amend and prepare an adequate complaint for transfer is moot.

Further, on March 7, 2014, AST responded to Kabbaj's motion, thus making his request for a deadline for AST to respond moot.[16] Since no proposed complaint was provided, neither the court nor the potential defendants have any means to evaluate Kabbaj's claims.

In light of the above findings, Kabbaj's motion to set a deadline (D.I. 66) is DENIED.

---

[13] Kabbaj considers his request found at D.I. 65 in the instant matter as equivalent to his motion to add defendants or amend in C.A. No 13-1522-RGA. The 13-1522-RGA matter is not and was not referred to me either by the parties' consent or pursuant to 28 U.S.C. § 636. Thus, I have no jurisdiction to address Kabbaj's request in that matter.
[14] See C.A. No. 13-1522 at D.I. 81, 92 and 96.
[15] Kabbaj v. Google, Inc., 2014 WL 1369864, at *6 (D. Del. Apr. 7, 2014).
[16] D.I. 68.

Kabbaj filed on March 21, 2014 another motion to file a complaint against proposed defendants AST, Simpson and Albro.[17] AST and Simpson were specifically named as releasees in the prior settlement in this matter. Kabbaj represented in his motion to set a deadline that Albro is Simpson's husband.[18] Under the terms of the settlement agreement and the April 24, 1012 order, releasees include family members of the named releasees, and Kabbaj is required to obtain permission from this court before instituting any new action against them. This mutual obligation is limited to the releasees in the settlement agreement and April 24, 2012 order in the instant matter. Google Inc., Amazon Inc., and Yahoo Inc. are identified in the body as ISP defendants, but not the caption of the proposed complaint. None of those entities are releasees under the settlement agreement and April 2014 order. John Does 1-9 are named as defendants in the caption, and noted in the body of the proposed complaint as "unidentified individuals, whereabouts unknown." They may or may not be releasees.[19] Since the court only retained jurisdiction for the purpose of enforcing the settlement agreement, consistent with the April 24, 2012 Order, the claims raised against those entities and individuals need not be addressed.

Attached to Kabbaj's motion to file a complaint is a proposed complaint.[20]

---

[17] D.I. 70.

[18] He also represented that Albro is the possible husband of Simpson in another matter. *Kabbaj*, 2014 WL 139864, at *6, n.4.

[19] At this stage, the court cannot determine whether any of the John Does could be or are releasees under the settlement agreement. However, the limited identification of the "John Does" as "whereabouts unknown," suggests this court may not have personal jurisdiction over them.

[20] D.I. 70, Ex. 1. Kabbaj's comments in his motion are directed to the conduct of Simpson, and not the other defendants identified in ¶¶ 3 through 7 of the proposed complaint.

Paragraphs 10 and 22 of the proposed complaint are the only paragraphs referencing any alleged conduct on the part of AST. Although paragraph 9 mentions AST, it does not attribute any purported activity on the part of AST.[21]

In determining whether Kabbaj's motion should be allowed, the court notes paragraph 9 of the proposed complaint asserts since February 2009, he and his family have allegedly been subject to a campaign of defamation and death threats, briefly referencing the other litigation previously noted herein. In Paragraph 10, he asserts in general conclusory language that the activity of all defendants involve the repeated filing of false criminal matters, defamatory statements on the web and books being sold on Amazon, email threats, stalking, vandalizing his property, spreading false allegations of his support of terrorism and "provocations" against his family in Morocco which resulted in incarceration of certain family members in that country. No where in this paragraph does Kabbaj provided any facts in support of his legal conclusions or conclusory accusations, identify who allegedly was involved in such conduct, nor address when these purported events occurred.[22]

---

[21] In ¶¶ 9 and 10 of the proposed complaint, Kabbaj references prior litigation in which the "details of the conflict is [sic] covered in previous civil/criminal litigation in Morocco" and the United States, noting three matters filed in this court (C.A. Nos. 10-431-RGA, 12-1322-RGA and 13-1522-RGA), and the action in the United States District Court for the Southern District of Florida (C.A. No.11-23492). Since the filing of the motion, Kabbaj filed three additional matters in this court without first obtaining permission as required. See C.A. Nos. 14-780-RGA, 14-982-RGA and 14-1001-RGA. Most recently, on December 15, 2014, a matter was transferred from the United States District Court of the Southern District of Florida, *Kabbaj v. John Does 1-58*, 14-1484-RGA for failing to abide by the consent order of April 24, 2012.

[22] According to ¶ 10 of the Confidential Settlement Agreement, General Release and Covenant not to Sue, portions of which are attached to a number of other filings by Kabbaj, specifically C.A. No. 10-431 RGA at D.I. 69, Ex. 1, in consideration for the settlement payment, he agreed not to sue AST and the other releasees "for anything

7

Paragraphs 11 through 14 primarily criticize Simpson's activity in the second action filed in this court, C.A. No. 12-1322-RGA, specifically his use of FED. R. CIV. P. 12 (b)(2) to have the matter dismissed on jurisdictional grounds and his failure to deny authorship of the web postings. These paragraphs also provide a history according to Kabbaj and his view of the court's decisions quashing his attempts to subpoena third parties before a scheduling order was entered and while Simpson's motion to dismiss was outstanding in that matter.[23] In ¶ 14, Kabbaj represents that the individual who authored defamatory communications forwarded to AST was Albro. Kabbaj also claims in ¶¶ 15 through 18, that from April 2013 and thereafter, Simpson and Albro through emails and other conduct threatened Kabbaj and his mother, filed a false complaint against him for harassment, which lead to his "false" arrest and continued their malicious prosecution of him in a New York court. Kabbaj claims he has confirmation that the author of the threatening emails is Albro. Paragraphs 19 through 21 contend Simpson and Albro stalked him for his religious beliefs, taken measures to hide their trail of electronic communications, and continued to pursue a hate crime matter against him in New York. Paragraph 22 merely asserts AST, Simpson and Albro breached the settlement agreement because AST and Simpson were direct parties to that agreement and Simpson's employment contract with AST executed in 2009, like the settlement agreement of 2012, prohibited engaging in defamation and filing false criminal

---

arising up until the date of this Agreement," which was executed on March 12, 2012. Therefore, conduct occurring before that date has been released.

[23] Admitted in ¶ 12 of the propose complaint, Kabbaj's appeal to the Third Circuit was unsuccessful and dismissal of C.A. No. 12-1322-RGA was affirmed. See Kabbaj v. Simpson, 547 Fed. Appx 84 (3d Cir. 2013).

8

complaints against Kabbaj.

Paragraphs 23 through 28 only mention his causes of action, that is, declaratory and injunctive relief, breach of contract, tortious interference with contract, negligent and intentional infliction of emotional distress and libel per se and seeks certain remedies. No additional facts are alleged.

Regarding Kabbaj's allegations against AST, beyond perfunctory statements in paragraph 10, he alleges no facts to support his claims against this proposed defendant. Rather any "facts" that may arguably support his purported causes of action are directed to Simpson and Albro. A general reference to three dismissed actions in this court and matters in another jurisdiction and country allegedly documenting the "details of the conflict" is insufficient. Kabbaj is required to supply the factual bases for his present proposed complaint within that pleading which provides the necessary notice for his present claims. Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."[24] His comments regarding AST are merely "bald assertions" and purported "legal conclusions."[25]

As previously discussed, Kabbaj lumps the proposed defendants together in

---

[24] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

[25] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (citations omitted) (rejecting "unsupported conclusions and unwarranted inferences"); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

9

contradiction to his more detailed allegations against Simpson and Albro.[26] Substantial parts of the proposed complaint criticize the court's decisions in C.A. Nos. 12-1322-RGA and 13-1255-RGA.

Some information is contained in the allegations against Simpson and Albro. This decision does not address whether Kabbaj's proposed complaint against them is sufficient to survive motions to dismiss or other similar filings under state or federal rules of civil procedure. Nor is it directed to the sufficiency of the allegations against John Does 1-9, Google, Amazon or Yahoo.

In his motion found at D.I. 70, Kabbaj also seeks immediate mediation in this jurisdiction "to confirm to the Court that the proper jurisdiction to sue Mark Simpson is Delaware, despite the fact that the 3rd Circuit has affirmed Simpson's claim of lack of jurisdiction in Delaware . . . ."[27] He seeks such relief to avoid "filing different cases against different parties in different states" regarding conduct that he asserts should be resolved in Delaware according to the settlement agreement.[28] His request conflates

---

[26] For example, D.I. 70, Ex 1 at ¶ 15 ("This threatening email was again falsely purporting to come from staff and students at AST, but Plaintiff suspected that the only persons who would send it were Simpson/Albro and their John Doe co-conspirators."); *Id.* at ¶ 16 ("After that event, Simpson/Albro obtained assistance of unidentified John Doe co-conspirators in Florida who whereby placed tomato sauce on the roof of Plaintiff's mother's car in another veiled threat to infect Plaintiff's mother with HIV . . . ." "Simpson/Albro thereby used Plaintiff's response to file a false complaint against him with the New York city Police Department alleging harassment, but they did not inform the police about their previous stalking, threatening and harassment of Plaintiff which occurred unabated for years since 2009 . . . ."; *Id.* at ¶ 18 "After serving the new Delaware subpoenas, plaintiff discovered that the individuals making these threats were using proxy companies to hide their identity. Despite the attempts to hide their identity, Plaintiff was still able to obtain confirmation that again . . . that the author of these death threats is an individual named Brian Albro . . . ."
[27] D.I. 70 at ¶ 3.
[28] *Id.* at ¶ 4.

10

two different matters, C.A. Nos. 10-431-RGA and 12-1322-RGA, involving different issues. Kabbaj admits this court granted Simpson's motion to dismiss for lack of personal jurisdiction in C.A. No. 12-1322-RGA, which was upheld on appeal, while C.A. No. 10-431-RGA provides limited jurisdiction for enforcement of the settlement agreement and the April 24, 2012 Order.[29] As affirmed by the Third Circuit, this court has no general or specific personal jurisdiction over Simpson.[30] Similarly, his proposed complaint suggests it has no personal jurisdiction over Albro.[31] As a result, exercise of personal jurisdiction over them would not comport with Delaware's Long Arm Statute under 10 DEL. C. § 3104, federal case law or due process.[32]

Finally, Kabbaj filed an "emergency motion for a teleconference to establish facts necessary to file an appeal in related case," which rehashes his comments filed in the other motions under consideration, as well as his numerous filings in other matters.[33] He again conflates C.A. No. 10-431-RGA with C.A. No. 13-1522-RGA. He assumes certain obligations on the court, including to explain its decisions, to initiate a teleconference merely because a party makes such a request and other demands. He claims to be confused by the court's decisions, and wants it to advise how to proceed, including drafting a complaint. He clearly disagrees with this court and the Third

---

[29] Paragraph 2 b of the settlement agreement recognizes mutual obligations on the part of Kabbaj and defendants in C.A. No. 10-431-RGA to obtain permission to sue.

[30] See Kabbaj v. Simpson, 547 Fed. Appx 84 (3d Cir. 2013).

[31] D.I. 70, Ex. 1 at ¶ 6 where plaintiff alleges Albro is "an attorney and resident of New York and Ireland."

[32] See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (a "federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."). See also, Kabbaj, 547 Fed. Appx at 86, n.6.

[33] C.A. No. 10-431-RGA, D.I. 71.

Circuit's opinion denying jurisdictional discovery.[34]

The court has not found that Kabbaj could not sue Simpson if he abides by the consent order of April 24, 2012 and brings his action in the proper jurisdiction. Rather, the court initially allowed him to sue Simpson, but cautioned that he do so in the appropriate jurisdiction where personal jurisdiction and effective service of process existed.[35] No decision by the court modified the releasees in the settlement agreement and consent order; rather Kabbaj advised numerous times that Albro is Simpson's partner and/or husband.[36] In fact, for example, in D.I. 70, he moved for permission to file an action against Simpson and Albro, but not against Google, Amazon or Yahoo demonstrating he understands the court's decisions and orders. Despite his concerns referenced in the motion, he filed an appeal in C.A. No. 13-1522-RGA on May 6, 2014.

Therefore, in light of the findings herein, including on the related motions, Kabbaj's emergency motion (D.I. 71) is DENIED.

In analyzing his motions, the court is cognizant of the more liberal approach granted pro se litigants like Kabbaj; however, pro se parties are required to follow rules of procedure and substantive law.[37] The court is further aware that the present motions

---

[34] The appellate court found Kabbaj failed to make out a prima facie case justifying jurisdictional discovery. *Kabbaj*, 547 Fed. Appx at 86, n.5.

[35] C.A. No. 10-431-RGA at D.I. 60.

[36] In his proposed complaint, Albro is "purported to be Mark Simpson's boyfriend/husband." D.I. 70, Ex. 1 at ¶ 14. *See Kabbaj*, 2014 WL 1369864, at *6 (D. Del. Apr. 7, 2014).

[37] *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel."); *Farretta v. California*, 422 U.S. 806, 834 n. 46 (1975) (finding pro se status is not a license to disregard procedural rules or substantive law). This circuit has repeatedly adhered to Supreme Court precedent in that regard. *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 567, 570 (3d Cir.

are four of many Kabbaj has filed, and he has initiated previous cases in this jurisdiction, New York and Florida. He is neither a novice nor unfamiliar with the federal court system.

## III. CONCLUSION

For the above reasons, the court denies Kabbaj's motions found at D.I. 65, 66 and 71, and denies in part and grants in part his motion at D.I. 70. An appropriate detailed order will be entered.

January 5, 2014         /s/ Mary Pat Thynge
                        CHIEF, UNITED STATES MAGISTRATE JUDGE

---

1996); *Lewis v. Williams*, C.A. No. 05-013-GMS, 2010 WL 2640188, at *3 (D. Del June 30, 2010) (proceeding as a pro se litigant does not give a party the right to "flagrantly disregard the Federal Rules of Civil Procedure in an effort to manipulate rulings in his favor"); *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 604 (D. Del. 2007).